No. 23,835.

THE SUNFLOWER TRUCK AND TRACTOR COMPANY, *Appellant,* v. THE UNITED WAREHOUSE COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. DAMAGES—*Sale of Property Pledged as Security on Notes—Excluded Evidence—No Error.* Complaint concerning the exclusion of evidence examined. *Held,* that the rejection of offered evidence was not error.

2. SAME—*Special Findings of Jury—Supported by Evidence.* The answers to special questions returned by the jury were supported by evidence.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed November 10, 1923. Affirmed.

Truck and Tractor Co. v. Warehouse Co.

*Lewis A. Hasty, Robert R. Hasty, Roger P. Almond,* and *Floyd N. Coss-man,* all of Wichita, for the appellant.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton,* and *W. E. Stanley,* all of Wichita, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff is seeking to recover damages arising from the sale of personal property pledged to secure the payment of promissory notes. Judgment was rendered in favor of the defendant, and the plaintiff appeals.

The plaintiff executed to the defendant four promissory notes aggregating $6,800 and, to secure the payment of each note, pledged a motor truck. The notes were ordinary promissory notes, except that each contained a description of the truck deposited as security therefor and authorized the defendant to sell the truck "without notice at public or private sale at the option of said company in case of the nonperformance of this promise, applying the proceeds to the payment of this note, including all charges." The notes were not paid at maturity; the defendant sold the trucks at private sale for $6,800; and the purchaser paid the interest on the notes and the expenses of the sale, $81,43.

The case was tried by a jury, which answered special questions as follows:

"Q. 1. What was the fair market value of each of the solid tire trucks at Wichita, Kansas, on the 18th day of August, 1920. A. The amount defendant received for same.

"Q. 2. What was the fair market value of each of the pneumatic tire trucks at Wichita, Kansas on the 18th day of August, 1920? A. The amount defendant received for same.

"Q. 3. Where were the trucks sold by defendant? A. At defendant's warehouse.

"Q. 4. To whom were they sold by defendant? A. J. J. Hawes.

"Q. 5. Did defendant exercise due diligence in endeavoring to sell the trucks at their fair and reasonable market value? A. Yes.

"Q. 6. From what source, if any, disclosed by the evidence could defendant have obtained a higher price for the trucks than it did obtain? A. Apparently none.

"Q. 7. What could defendant have done that it did not do to obtain a higher price than it did for the trucks? A. Apparently nothing.

"Q. 8. If you answer question number five in the negative then state what price defendant could have obtained by the use of due diligence. A. X.

"Q. 9. If you answer question number eight, state when defendant could have obtained such price. A. X.

32—114 KAN.

"Q. 10. Did defendant notify plaintiff that it would sell the trucks if the notes were not paid or reduced in amount.  A. Yes.

"Q. 11. Did defendant notify plaintiff after the notes were due and before the sale that the trucks would be sold at private sale?  A. Yes.

"Q. 12. Did defendant notify plaintiff of the time and place of sale of the trucks?  A. Yes.

"Q. 13. Did plaintiff's manager, True, talk to defendant's manager, Brough, a short time—possibly a day or two—before the sale and tell Brough in substance that he, True, had a deal on to sell some of the trucks in defendant's warehouse?  A. No.

"Q. 14. Referring to question number thirteen, did Brough thereupon say to True in substance, 'Alright, I have not sold the trucks, and I am not making any special effort to?'  A. No.

"Q. 15. If you answer question number thirteen in the affirmative, state whether or not the sale of these trucks by defendant was made within a day or two at most after this conversation and without notice or other communication between the plaintiff and defendant or these managers.  A. X.

"Q. 16. If you find for plaintiff, do you base your verdict on any fraudulent conduct of defendant that may have been disclosed in the evidence?  A. X.

"Q. 17. Did defendant act in good faith in selling the property?  A. Yes.

"Q. 18. If you answer question number seventeen in the negative, state wherein defendant failed to exercise good faith.  A. X."

1. The plaintiff complains of the exclusion of evidence. To present the position of the plaintiff concerning this matter, we quote from its brief as follows:

"Our whole case rested on this transaction:

"One day in August, 1920, apparently the 18th plaintiff's manager called defendant's manager on the telephone and asked if the trucks had yet been sold, and was told that they had not, whereupon, plaintiff's manager advised that he had purchasers for two and possible three of these trucks. Plaintiff's manager testified that defendant's manager assented to this and advised that he was not making much of an effort to sell them anyway. Defendant's manager testified that in response to this information he said 'I was endeavoring everywhere to sell them, and if he beat me to it, I would be that much more pleased.'

"Following this conversation, plaintiff proceeded to close a deal with two purchasers and made out papers covering one of the pneumatic tired trucks and one of the hard tired trucks in the warehouse. While these papers were being made up, the day after the above-mentioned conversation, a letter came from the defendant's manager, written the day before, saying the trucks were not available, as he had sold them that day by long distance telephone for face of the notes and some minor charges. Plaintiff had two of them sold, and the papers nearly completed, for more money than the defendant got for the four."

B. C. True, the manager of the plaintiff, testified that at the time

of receiving the letter from the defendant notifying it that the trucks had been sold, he was negotiating for the sale of two of the trucks pledged to secure the payment of the notes, but that on receiving the letter, he ceased those negotiations and sold to the persons with whom he had been negotiating two other trucks of the same weight and model for $3,800 and $3,150, respectively.

Ethel True, the wife of B. C. True, was placed on the stand as a witness and was asked if she knew the state of the negotiations with reference to selling the two trucks when the letter above mentioned was received. Objection to the question was sustained. The abstract shows that the following then occurred:

"Plaintiff offers to prove by the witness on the stand that she received in the office of the Sunflower Truck and Tractor Company, this letter of August 18th from the defendant, notifying plaintiff that the trucks had been sold, and that at the time of the receipt of the letter, she had already made out papers for selling two of the trucks in the warehouse, and had placed the number of those trucks on the papers, and the price at which they were to be sold, and that she at once notified her husband, Mr. True, of the receipt of this letter, and that he thereupon called the manager of the defendant's company and had a conversation with him, relating to this letter, and to the sale of these trucks.

"The Court: The proffer as a whole will be refused.

"Mr. Hasty: Well, we could not make them separately. I don't know how we would make this offer separately.

"The Court: Well, you have got a bunch of matter in there that is certainly incompetent.

"Mr. Hasty: That stands as our offer.

"The Court: All right. The proffer will be refused, for the reason the court cannot pass on it in part."

An affidavit of Ethel True was produced on the hearing of the motion for a new trial. That affidavit tended to support the offer of proof made by the plaintiff.

On July 16, 1920, the defendant in writing notified the plaintiff that the notes must be reduced or taken up and that in the event the plaintiff should fail to do either, it would be necessary for the defendant to dispose of the trucks to satisfy the notes. The notes were due on July 29, 1920. They were not paid, and the defendant sold the trucks on August 18, 1920. The defendant had the right to sell the trucks at private sale without regard to any effort the plaintiff might make to sell them. Because the defendant sold at private sale, it was compelled to exercise due diligence and to secure a fair price. There was evidence which tended to show that it did both, and the jury found accordingly. When the defendant sold the

trucks, all rights of the plaintiff therein terminated. It could not thereafter sell them for any price. The defendant had the right to sell the trucks at any time until it received the payments requested in its letter of July 16. The sale by the plaintiff was too late, and evidence of that sale was incompetent. The plaintiff probably offered the evidence to show that the defendant did not secure a fair price for the trucks. Evidence of a sale of other trucks by the plaintiff at a price greater than that received by the defendant did not tend to prove that the price received by the latter was not a fair one, nor that the defendant had not exercised diligence in selling the trucks.

2. The plaintiff contends that the special findings of the jury were contrary to the evidence. To establish this contention, it is necessary to show the part of the evidence which the jury must have believed was not true. There was evidence contrary to the answers to some of the special questions, but there was evidence to support each of those answers. That being true, this contention cannot be sustained.

The judgment is affirmed.